Your flexibility. May it please the court, counsel, this is an appeal from an order dismissing my client's pro se habeas petition. Yes it is. I'm sorry, your honor, is there another technical issue? Some feedback, but I'm not inclined to do much with it given the fact that we can hear you and understand you even with the feedback. I don't know that it would be a good idea to try to try something else at this point because we can at least can you understand him, Judge Cobus? I'm good to go. All right, so let's let's proceed. It's fine. Mr. Giese alleged that he received ineffective assistance of counsel when his trial counsel failed to pursue a downward departure based on aberrant behavior. The government sought to dismiss his habeas petition by arguing that Mr. Giese's conduct constituted otherwise using a dangerous weapon. That was a different position than the government took in the underlying sentencing. It argued and accepted the finding that Giese had merely brandished a dangerous weapon. Counsel, I'd like to ask you about that. That's a confusing issue for me. I mean, the government didn't argue that, did it? That was in the context, I believe, of an enhancement, right? An upward enhancement. And the PSR came out and the government rejected it. Correct. Does that make a difference as opposed to if the government had sought the four points instead of the three and the district court had made a finding on that, rejecting the government's position? Because what happened here is the government just didn't seek that enhancement under the guidelines. And I'm wondering if you think that makes a difference. I don't think it does. I think that the government accepted the classification of this conduct as brandishing. It was in the PSR. They were asked whether they agree with that classification. And they accepted it. And if you look at application note 4A, this is an either or classification. It can be brandished or otherwise used. And under application note 5 of U.S. sentencing guideline 1B1.1, if there are two potential classifications that can be used, the conduct that leads to the greater offense level should be chosen. Did the district court make a factual finding? And if so, when did it do that? It didn't make an express factual finding with respect to whether he brandished or otherwise used. But it did bake into the offense level that it reached, level 22. And in its statement of reasons, it agreed with and it made the statement the court adopts the present investigation report without change. And that's at appendix 53. And so the categorization of brandishing was at least a fact of the advisory guideline range that the court used. And the court did say at the sentencing hearing, quote, the advisory guideline range does take into consideration the fact that if anyone tried to report it within 30 minutes, that the bomb would go off. Obviously in the context of this case, part of our position is the government shouldn't be able to, in a habeas, in a collateral proceeding, take a different position than it did with respect to the underlying proceeding. The alternative argument is that both the court and the government in its original categorization got it right, that this is brandishing and does not rise to the level of otherwise using. Now are you proceeding on an estoppel theory or a waiver theory or both? Because I'm struggling for a lot of reasons with this argument. I think it's difficult. But one thing I'm struggling with is what box to put it in. Is it the waiver box or the estoppel box? I think it's a waiver because the government has the burden to, given the binary nature of otherwise using or brandishing and the obligation to seek the greater of the two if either applies, that they did not seek to categorize it as otherwise using. So that's, I guess, the threshold issue is whether they can change their position in the collateral proceeding. In our view, they shouldn't be able to do so. Does it matter at all, and it might not, but does it matter that the government had the burden on the downward departure? I don't think it does because it's a habeas and effective assistance claim. But you're right that the government has the burden on the enhancement. And to the extent that the argument, again, my client's pro se habeas petition was, I wasn't, this was never discussed, there was an available departure, and he never sought to raise it. So he was ineffective in that regard. The government argued in seeking to dismiss it, the habeas petition, well, he would have never been eligible for it to begin with. So it fails as a matter of law. But the underlying sentence is the brandishing categorization. So to go back to Judge Straus' question, I think it is a waiver that they can't take inconsistent positions in a subsequent collateral proceeding. Well, let me ask you this. A waiver is the intentional relinquishment of a known right. The Supreme Court's been saying that for, I don't know, 40 or 50 years. When the government refused to object to the brandishing enhancement at the original proceeding, did they intentionally relinquish the right to argue the use of a dangerous weapon later? Well, I think that they had, because it was their opportunity to prove that at the time, and it's their burden to do so, then that's the effect. Once my client subsequent that in the collateral proceeding, it doesn't permit them to switch tacks, so to speak, and argue actually this was brandishing, or excuse me, actually this was otherwise using. Okay. And with respect to the merits in terms of how this should be categorized, you know, it's our position that if you look at Miller, which is the 11th Circuit case, if you look at Banton, which is the 9th Circuit case, there is a specific act taken with the object. There's lighting the fuse. There's pressing a detonator. In those cases, there is something more than merely showing it and making some step to represent that it's dangerous. You know, when my client walked in the bank, he had a box, and he made some statements so that to create the impression that it was a dangerous weapon, and I don't think the government meaningfully distinguishes between a conduct that's necessary to create the impression of harm and something more that's required in order to raise it to the level of otherwise using. And I think this case is better situated within the District of Nebraska opinion and within the District of Maine case that we cited where the defendant was not precluded from seeking an aberrant behavior downward departure. Can I ask you about—I know you want to reserve a little time for rebuttal—United States v. Payne, and this may be a little unfair because I don't think either party relies on it, but I'll tell you what happened. An individual robbed a bank, pulled a handgun, pointed the handgun at the teller, and we said that that was sufficient to constitute use of the dangerous weapon, so pointing it. Why isn't there at least that much in this case, if not more, by leaving a cardboard box on the counter? I think the distinction is that the otherwise use has to be referenced in some point. You have to be using the purported dangerous weapon in order to create additional fear, and there are cases that fit the fact pattern you just say where a specific person is directed to take an action, whether it's pointing a gun or something like that, and I think just basically in this instance, it's better viewed as brandishing because the same statements that are being used to effectuate fear, to create that mental impression, there's not anything more beyond that. Again, he's got an empty box. He has to do something to be classified as a dangerous weapon, and here I don't think there's something beyond that in order to take it up to the higher level. I'd reserve my time for rebuttal, Your Honor. You may. Thank you. Mr. Clapper. Thank you, Your Honor. May it please the court and counsel, on behalf of the United States, we're asking this court to affirm the district court's position. David Giese seeks relief under 2255, claims his attorney's performance was deficient, and his claim is that his attorney was deficient for not seeking a downward departure under 5K2.20. The simple fact is, and the analysis of this case, the district court properly ruled that 5K2.20 wouldn't have been available. Now, one of the arguments from defense counsel here is that we shouldn't be able to go back and take a different position. Well, of course we should, because that's the analysis under Strickland. One, was it a deficient performance, but two, would it have changed the outcome? So we have to look at what analysis would have occurred if the objection would have been made. Mr. Clapper, why doesn't the waiver argument work? I guess I kind of view this in two ways. One, it's possible the district court made a finding below by accepting the PSR. And secondly, it's possible that the government waived the ability to litigate this issue by not asking for the four points. Why don't either of those or one of those arguments work? Judge, the reason they don't work is because without the objection being made or the seeking of the downward departure, the government doesn't have the opportunity then to present evidence to challenge that. So in this particular case specifically, had defense counsel sought departure under 5K2.20 and claimed that it wasn't otherwise used, two things probably would have happened. One, the government would have argued against that, presented the facts, and two, would have sought the higher enhancement under the guidelines for the bank robbery, 2B3.1, the four-point enhancement for a dangerous weapon being otherwise used. What we have here is what typically happens in cases where there's a plea agreement. There are facts that aren't contested when the pre-sentence report comes out. The parties accept what the outcome is and proceed forward. If there's something that is highly contested, and that might be because the range doesn't work out appropriately, then both parties have the opportunity to present evidence. But without the seeking of the downward departure or the objecting to the enhancements, it is not a waived argument by the government. It didn't relinquish a known right because it wasn't contested at the sentencing. Was there new evidence that you presented in front of the district court, paper-wise or otherwise, in the Section 2255 proceeding that wasn't present at the first proceeding? Anything new? I don't believe there was anything new, Your Honor. So does that undercut your argument that the government didn't really have a chance to present anything at the first proceeding? I could see the district court coming in and saying, well, under your argument, now there's something new. Now it's clear that it was actually used. And of course, at that point, then, your argument makes sense. But does your argument make sense when essentially the district court is operating off the same record? In other words, the district court is just looking at what happened in the first proceeding and reaches an entirely different conclusion. Well, what you have here, though, is the district court accepting the pre-sentence report, its factual determinations, and its guideline calculations, as is, without any objections or additional evidence. And the reason it's reasonable for the district court to do that is because it happens all the time. We only present extra evidence when there's an objection by either party. So for whatever reason, both parties in this case, with the pre-sentence report, as it turned out, and the resulting guideline calculation and the range, felt that that was appropriate. Counsel, isn't it true that the government's generally obligated to seek the higher enhancement if the facts support that enhancement? Well, that'd be DOJ policy, but that would be mostly to seek a conviction of the highest penalized crime, not necessarily the enhancements. And we're not under, you know, every case kind of plays out on its own. In this particular case, the facts are as stated in the pre-sentence report, and both sides acquiesced as to that, and the district court agreed with that as well. If I understand what the district court did here, I think the district court said that it had not made factual findings. It had simply accepted the PSR, if I remember. And then the district court did not, if I understand you, did not make additional factual findings in the 2255. So that seems a little odd to me. Maybe I'm just misunderstanding how it played out. It seems like in the 2255, the court did rely on the PSR, maybe just in the same way it did below. I, in the 2255, it relied on the facts in the 20, in the pre-sentence report. That is true. There were facts in the pre-sentence report that would preclude the application of the downward departure under 5k, 2.20. And my understanding is, and I can ask defense counsel too, but defense counsel is not really contesting the underlying facts in the PSR. Is that your understanding? My understanding is just, I don't know if it's a legal or a factual or a mixed question on the application of which enhancement, but there's no real factual dispute about what happened that day. Is that your understanding, Mr. Clapper? It is, your honor. You know, this is a case, he had a fake bomb, but that's not contested. It was presented and shown to the bank employees. That's not contested. He made verbal announcements to the bank employees and threatened them to detonate the bomb if they contacted the police within 30 minutes. That's not contested. And what also isn't contested is the effect that it had on the employees, which was testimony presented by those employees at the sentencing hearing. It fell. And so the real issue here is, you know, again, is it otherwise used and the district court wasn't asked to make that decision at the sentencing level. But if it had, all of the facts were available to the district court at that time to deny seeking that downward departure. I don't know where I'm at on time here, but. You got about a minute and a half left. I think that's all I have. What about, I'm just going to follow up. What about the merits of the issue, which is, was it actually the use of a dangerous weapon here on the merits once we get there? And if so, why? I think there's plenty of cases out there that say that objects that aren't dangerous weapons, but are used as dangerous weapons, satisfies the requirement of a dangerous weapon definition under the guidelines. I don't think that's contested at all, whether it's possessed, brandished, or otherwise used. And then what we get into is the distinction is that fake object used in such a way that it has a coercive effect. And that's what the Benston case and the Hano case really stand for. And the reason, you know, those were 2008, 2019. Neither one of them cites this district court opinion from Nebraska that he relies so heavily on in its brief. And that was back in 2006. So these courts have had opportunity to consider similar facts and similar acts on behalf of the defendant and found that the coercive effect or acts by the defendant with a fake weapon that would otherwise be believed to be a dangerous weapon qualifies for the otherwise used and would then prohibit or make it so aberrant behavior would not be available to a defendant. Okay. Thank you, Mr. Clapper. Mr. Hagan, we are back to you. And you have about 38, 40 seconds of rebuttal time or so. Counsel, if I could jump in. Sorry. Do you agree that there's no real factual dispute about what happened? And I think maybe go ahead, sir. I was going to start with your question. The factual basis statement is the anchor point for the facts. And we don't dispute that. That's what the court's reasoning was predicated on. So why do you need an evidentiary hearing if there's really no factual dispute? Isn't this really a legal call on the significance of, in other words, whether the departure could have been achieved based on the facts that you don't dispute? And then there's a kind of a legal call that goes along with it, and that is what is the implication as far as waiver or prior finding? Aren't those legal questions here so there's no hearing needed? Well, so the dispute is between my client's testimony, which says the lawyer never talked to him about it at all, his trial counsel. I was appointed for this appeal. But, you know, trial counsel says I made an active decision. And my client says it was never discussed at all. But to speak to your point, Judge Kobus, I think we're entitled to an evidentiary hearing as a matter of course and is preferred under 2255B. What troubles me is that the district court said, well, it never would have been available to you because it's otherwise used. And to speak to one of Judge Straus' questions, I think the court made a finding here. I mean, I think the government waived it, and then the court also made a finding. It goes to both issues. It's baked into the finding that this is an offense conduct of 22. And remember that there's a finding that this is a three-level enhancement, which is brandishing, not four-level, which is otherwise using. And I'm trying to respond to the questions from the panel. If I may, the relief— I'll give you 15 more seconds. We've got to wrap this up, but go ahead. Understood. The relief we seek is to remain so that my client may pursue his claim and have an evidentiary hearing. Thank you for the court's indulgence with my technological issues. Thank you, Mr. Hagan. And let the record note that you were appointed under the Criminal Justice Act, and the court appreciates your willingness to take the representation. The case is submitted, and we will issue an opinion in due course.